[Cite as *State v. Falish*, 2024-Ohio-5145.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF LORAIN | ) | |

| STATE OF OHIO | | C.A. No. 23CA012034 |
| | | |
| Appellee | | |
| | | |
| v. | | APPEAL FROM JUDGMENT |
| | | ENTERED IN THE |
| MELINDA FALISH | | OBERLIN MUNICIPAL COURT |
| | | COUNTY OF LORAIN, OHIO |
| Appellant | | CASE No. 23CRB00190 |

DECISION AND JOURNAL ENTRY

Dated: October 28, 2024

FLAGG LANZINGER, Judge.

{¶1} Defendant-appellant Melinda Falish appeals her conviction from the Oberlin Municipal Court. This Court affirms.

I.

{¶2} This case involves an altercation between Falish and S.S. at the Amherst Eagles' Club. After the altercation, Falish was charged with theft, a felony of the fifth degree, in violation of R.C. 2913.02(A), and assault, a misdemeanor of the first degree, in violation of R.C. 2903.13(B). Prior to trial, the theft charge was dismissed, and the remaining charge was amended to an assault charge under R.C. 2903.13(A). The matter proceeded to a jury trial.

{¶3} At trial, the State presented testimony from S.S., S.S.'s boyfriend, the investigating officer, two bartenders who worked at the Amherst Eagles' Club, and two additional witnesses to the altercation. The State submitted multiple exhibits, including photographs of S.S.'s injuries.

{¶4}    The State called E.J. and N.N., who both testified that they were employed as bartenders at the Amherst Eagles. The Eagles' Club was a members-only establishment. Falish was not a member of the club. Both bartenders testified that they were at Amherst Eagles on April 7, 2023; E.J. was working while N.N. was off duty visiting as a patron. N.N. and Falish were friends and had previously communicated that evening. N.N. testified that when Falish "rang the buzzer" to gain access into the establishment, N.N. let her in.

{¶5}    The State also called S.G., Falish's ex-boyfriend. S.G. is a member of the Eagles' Club. S.G. was at the establishment the night of the altercation. He was accompanied by S.S., his current girlfriend, S.S.'s mother and father, and his brother, M.G. The group of five sat together at the bar. According to S.G., after Falish entered the establishment, she walked towards him and S.S. S.G. further testified that "[S.S.'s] mother got up and said, '[Falish], there's no reason for you to be here. [S.G.] and [S.S.] are here. We don't want any trouble.'" Multiple witnesses testified that shortly after Falish entered, Falish approached S.S., yelled at S.S., and eventually grabbed her hair. M.G. and K.S., both testified they witnessed Falish "pulling [S.S.'s] hair." E.J. testified that Falish "had a hold of [S.S.] pretty good. She was not letting go." N.N. testified that "[Falish] and [S.S.] had a hold of each other."

{¶6}    Multiple witnesses testified about the physical altercation that followed. K.S. testified that "two or three gentlemen were holding [Falish] back because she kept on attacking [S.S.]." K.S. further testified that after Falish "broke away from them," K.S. was pushed and "knocked . . . down." M.G. testified that he held Falish. At the time of the incident, S.G. was recovering from an accident and had a prosthetic leg. S.G. testified that in the struggle after "[Falish] pulled [S.S.'s] hair[,]" he was "pushed over." Multiple witnesses testified that they did not see anyone strike Falish.

{¶7}     Multiple witnesses testified about "glob[s]" or "chunks" of hair that had been pulled from S.S.'s head, that were "on the floor[,]" "on the [bar] chair[,]" and "on the bar." S.S. "had to spend four to five months with a bald spot in [her] hair." According to S.S., her face was scratched by Falish.

{¶8}     Falish presented two witnesses. Falish testified in her own defense and called her friend, L.P. L.P. was not a member at the Eagles' Club but was a patron at the bar the night of the incident. Falish arrived at the Eagles' Club nearly a half an hour after L.P. L.P. testified that Falish walked towards him and began speaking to him. L.P. stated that while he and Falish were speaking, S.S.'s mother "charged by me and just went at [Falish]." L.P. testified that S.S.'s mother started the fight when she "snatched [Falish's] hair up[.]" According to L.P., towards the end of the altercation, M.G. had Falish "on the ground" and was "shaking her like a rag doll." L.P. stated that he threw M.G. off Falish, "got her up," and "grabbed her shoe, which had been knocked off."

{¶9}     Falish testified that she visited the Eagles' Club to spend time with her friend N.N. Falish testified that after walking into the establishment with N.N., she saw her friend L.P. in a different part of the room. According to Falish, as she was walking towards L.P. to say hi, she was verbally accosted by S.S.'s mother. Falish stated that S.S.'s mother "lunged at [her]" and "grabbed a hold of . . . [her] hair, all in the midst of yelling and screaming at me and telling me that she was going to slam my head into the ground and cause me . . . brain trauma."

{¶10}    During cross-examination, the State presented evidence of Falish's written statement to the Amherst Police Department provided the night of the altercation. In her written statement, Falish provided a different series of events leading up to the altercation. Falish had claimed that "[she] walked into the Amherst Eagles, walked over to a friend that [she] went to see [at the Eagles' Club], saw another friend there, walked over to talk to him, [L.P.]. The girl that

[L.P.] was by, [S.S.], started to run her mouth to me. I felt attacked so she tried to come towards me to assault me."

**{¶11}** After hearing the evidence, the jury found Falish guilty of assault. The trial court sentenced Falish to a $200.00 fine, court costs, and thirty suspended days in jail on the condition that Falish did not commit any similar offenses for a period of one year. Falish now appeals raising three assignments of error for our review.

II.

## ASSIGNMENT OF ERROR I

**MS. FALISH WAS DENIED HER RIGHT TO A FAIR TRIAL WHEN THE COURT ERRED BY PERMITTING WITNESSES TO TESTIFY AFTER THEY VIOLATED THE SEPARATION OF WITNESS ORDER.**

**{¶12}** In her first assignment of error, Falish argues that she was denied a fair trial because the trial court allowed witnesses to testify after they were observed leaving and returning to the courthouse together during a lunch break. Falish argues that the trial court erred by permitting their testimony and not declaring a mistrial.

**{¶13}** During the trial, after a lunch break, Falish's trial counsel alerted the trial court that he had observed "a separation of witnesses issue." Counsel observed one witness who had already testified, and two other witnesses yet to testify, leaving and returning to the courthouse together. The trial court permitted defense counsel to question the two witnesses who had not yet testified, on the record, but without the jury present. Both witnesses proffered that they had lunch together but did not have lunch with the witness who already testified. Both witnesses also proffered that they had not spoken to each other about the case. After the proffer, defense counsel neither objected to the witnesses testifying nor moved the court to exclude any witnesses. Defense counsel never

moved for a mistrial. After the verdict, defense counsel did not file a motion for a new trial pursuant to Crim.R. 33(A)(2) on the basis of witness misconduct.

{¶14} While defense counsel brought the witnesses' conduct to the trial court's attention through a proffer on the record, Falish forfeited her objections by not raising witness misconduct in any form. "It is well-settled that this Court will not address arguments for the first time on appeal." *Frankowski v. Mahl,* 2024-Ohio-1202, ¶ 15 (9th Dist.), quoting *State v. Williamson*, 2022-Ohio-185, ¶ 31 (9th Dist.). "This Court acts as a reviewing court and will not usurp the role of the trial court by deciding new issues at the appellate level." *Williamson* at ¶ 31 (9th Dist.), citing *Allen v. Bennett*, 2007-Ohio-5411, ¶ 21 (9th Dist.). Because Falish asserts she was denied a fair trial for the first time on appeal, she has forfeited all arguments except for plain error.

{¶15} "Where a party has forfeited an objection by failing to raise it, the objection may still be assigned as error on appeal if a showing of plain error is made." *State v. Fitzgerald*, 2007-Ohio-701, ¶ 8 (9th Dist.). However, Falish did not argue plain error in her appeal. This Court will not create a plain error argument on her behalf. *See Simecek v. Simecek*, 2024-Ohio-2471, ¶ 65 (9th Dist.); *State v. Hairston*, 2006-Ohio-4925, ¶ 11 (9th Dist.)

{¶16} Falish's first assignment of error is overruled.

## ASSIGNMENT OF ERROR II

**THE VERDICT IN THIS CASE IS AGAINST THE SUFFICIENCY OF THE EVIDENCE AND SHOULD BE REVERSED BECAUSE IT VIOLATES THE FIFTH, SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION, AND ARTICLE I, SECTION 10 OF THE CONSTITUTION OF THE STATE OF OHIO.**

{¶17} Falish argues that her conviction was against the sufficiency of the evidence because the State failed to disprove that she acted in self-defense during the altercation.

{¶18} "Self-defense is an affirmative defense in Ohio." *State v. Fleckenstein*, 2023-Ohio-4347, ¶ 23 (9th Dist.), citing *State v. Messenger*, 2022-Ohio-4562, ¶ 24. "[A] defendant charged with an offense involving the use of force has the burden of producing legally sufficient evidence that [his] use of force was in self-defense." (Alterations in original.) *Id.*, quoting *Messenger* at ¶ 25. Once a defendant satisfies his burden of production, the burden of persuasion shifts to the State "to prove beyond a reasonable doubt that the accused did not use force in self-defense." *State v. Moore*, 2023-Ohio-2864, ¶ 9 (9th Dist.), quoting *State v. Brooks*, 2022-Ohio-2478, ¶ 6. In *Messenger*, the Ohio Supreme Court addressed the question of whether "[s]elf-defense claims may be reviewed on direct appeal for sufficiency of the evidence." *Messenger* at ¶ 12. The *Messenger* Court ultimately held that "[t]he state's new burden of disproving the defendant's self-defense claim beyond a reasonable doubt is subject to a manifest-weight review on appeal, and the Tenth District [Court of Appeals] correctly declined to review the state's rebuttal of self-defense for sufficiency of the evidence." *Id.* at ¶ 27.

{¶19} This Court has applied the holding in *Messenger* in several recent cases, analyzing the State's rebuttal of self-defense under a manifest weight review rather than a sufficiency analysis. *See, e.g.*, *State v. McElroy*, 2023-Ohio-1609 (9th Dist.); *State v. Greenstreet*, 2023-Ohio-4224 (9th Dist.); *State v. Alexander*, 2023-Ohio-3450 (9th Dist.), *State v. Scott*, 2024-Ohio-2355 (9th Dist.). Accordingly, based on the authority of *Messenger*, we decline to review the state's rebuttal of self-defense for sufficiency of the evidence. Falish's second assignment of error is without merit and overruled.

## ASSIGNMENT OF ERROR III

**THE CONVICTIONS ARE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE IN VIOLATION OF THE DUE PROCESS CLAUSE OF THE 14TH AMENDMENT TO THE U.S. CONSTITUTION AND OF THE OHIO CONSTITUTION.**

{¶20} Falish argues that her conviction was against the manifest weight of the evidence because the State failed to disprove her claim of self-defense. We disagree.

{¶21} When considering a challenge to the manifest weight of the evidence, this Court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist. 1986). A reversal on this basis is reserved for the exceptional case in which the evidence weighs heavily against the conviction. *State v. Croghan*, 2019-Ohio-3970, ¶ 26 (9th Dist.).

{¶22} The elements of self-defense are as follows:

(1) that the defendant was not at fault in creating the situation giving rise to the affray; (2) that the defendant had a bona fide belief that he [or she] was in imminent danger of death or great bodily harm and that his [or her] only means of escape from such danger was in the use of such force; and (3) that the defendant did not violate any duty to retreat or avoid the danger.

(Alterations in original.) *Messenger*, 2022-Ohio-4562, at ¶ 14, quoting *State v. Barnes*, 94 Ohio St.3d 21, 24 (2002). "All three of these elements must be present to establish self-defense." *State v. Zink*, 2023-Ohio-1250, ¶ 9 (9th Dist.), quoting *State v. Warren*, 2020-Ohio-6990, ¶ 12 (9th Dist.). To carry its burden of persuasion, the State need only disprove one of the foregoing elements beyond a reasonable doubt. *State v. Williams*, 2020-Ohio-3269, ¶ 10 (9th Dist.).

{¶23} After reviewing the record, we cannot conclude that this is the exceptional case where the evidence weighs heavily against Falish's convictions. The jury heard testimony from multiple witnesses, including S.S. and other bystanders, who consistently described how Falish initiated the altercation by grabbing S.S.'s hair and attacking her. Although Falish testified that she arrived at the Eagles' Club to visit a friend and was then verbally accosted and physically

attacked by S.S.'s mother, the jury was in the best position to judge the credibility of her claim. The jury could reasonably infer from the evidence presented that Falish created the situation and did not act in self-defense. This Court will not overturn a conviction as being against the manifest weight of the evidence simply because the trier of fact chose to believe the State's version of events over another version. *Warren* at ¶ 25, quoting *State v. Tolliver*, 2017-Ohio-4214, ¶ 15 (9th Dist.). Falish has not demonstrated that this is an exceptional case where the evidence weighs heavily against her convictions. *See Otten* at 340. Accordingly, Falish's third assignment of error is overruled.

### III.

**{¶24}** Falish's assignments of error are overruled. The judgment of the Oberlin Municipal Court is affirmed.

Judgment affirmed.

————

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Oberlin Municipal Court, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

                                                     _____

                                                     JILL FLAGG LANZINGER
                                                     FOR THE COURT

STEVENSON, P. J.
HENSAL, J.
CONCUR.

APPEARANCES:

GIOVANNA V. BREMKE, Attorney at Law, for Appellant.

PATRICK WARD, Attorney at Law, for Appellee.